United States Court of Appeals,

Eleventh Circuit.

No. 94-6684.

TRM, INC. d/b/a Food Circle, Plaintiff-Appellee,

v.

UNITED STATES of America, Department of Agriculture, Food and Nutrition Service Food Stamp Program, Defendants-Appellants.

May 19, 1995.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-93-G-2563-S) J. Foy Guin, Jr., Judge.

Before KRAVITCH, ANDERSON and EDMONDSON, Circuit Judges.

KRAVITCH, Circuit Judge:

This case arises out of the permanent disqualification of a grocery store from participation in the federal food stamp program because two of the store's employees allegedly accepted food stamps in exchange for cash. In a suit challenging the action, the district court granted summary judgment in favor of TRM, Inc., d/b/a Food Circle ("TRM"), and set aside the U.S. Department of Agriculture, Food and Nutrition Service's disqualification of the store, holding that TRM's due process rights had been violated. We REVERSE and REMAND.

I. *Facts*

By letter dated July 14, 1993, the U.S. Department of Agriculture, Food and Nutrition Service ("the FNS"), notified TRM, which operated a grocery store in Birmingham, Alabama, that its employees had violated 7 C.F.R. § 278.2(a) by exchanging food

stamps for cash.[1]  This is known as "trafficking."  *See* 7 C.F.R. §
271.2.   The  letter  advised  TRM  that  it  was  subject  to  either
permanent  disqualification  from  the  food  stamp  program,  or  if
certain  criteria  were  met,  the  imposition  of  a  civil  monetary
penalty ("CMP").[2]  The letter explained that to qualify for a CMP,
TRM  had  to  send  a  request  and  supporting  documentation  to  the  FNS
within 10 days.   Further, TRM was informed that it could reply to
the charges and present any relevant information to the FNS.

TRM  responded,  through  counsel,  and  neither  disputed  that  the
trafficking  incidents  took  place,  nor  requested  a  CMP.   Instead,
TRM  explained  that  it  had  not  properly  supervised  its  employees
because  one  of  the  store's  owners  was  recovering  from  gunshot
wounds,  stated  that  the  two  employees  involved  had  been  terminated,
and  detailed  actions  taken  by  the  store  to  prevent  future  abuses,
such as the installation of surveillance cameras.

After  considering  TRM's  submissions,  the  Officer-in-Charge  of
the  FNS  Montgomery  Field  Office  notified  TRM,  by  letter  dated
August 13, 1993, that it was upholding the charges, and that TRM

---

[1]7 C.F.R. § 278.2(a) provides in part:

> Coupons may be accepted by an authorized retail food
> store only from eligible households or the households'
> authorized representative, and only in exchange for
> eligible food.  Coupons may not be accepted in exchange
> for cash, except when cash is returned as change in a
> transaction in which coupons were accepted in payment
> for eligible food....

[2]The letter stated that to qualify for a CMP there must be
substantial evidence that the store had an effective policy and
program in place to prevent such violations, and that the
specific criteria for establishing such a program could be found
in 7 C.F.R. § 278.6(i), a copy of which purportedly was enclosed.

would be permanently disqualified from the food stamp program; the letter also stated that TRM had the right to further administrative review.[3] TRM availed itself of such review and met with an FNS Administrative Review Officer ("ARO"). The ARO upheld TRM's permanent disqualification.[4]

TRM filed suit in federal district court, seeking reversal of the permanent disqualification penalty. Following an evidentiary hearing, the district court stayed TRM's disqualification, pending resolution on the merits, relying on language from the stay order in *Holmes v. United States,* 815 F.Supp. 429, 432 (M.D.Ala.1993), *judgment entered and stay dissolved,* 868 F.Supp. 1348 (M.D.Ala.1994),[5] to the effect that the permanent disqualification penalty might violate a store owner's due process rights. In the stay order, the district court also stated that if TRM moved for summary judgment, the district court intended to grant the motion. TRM made such a motion, which the district court granted on May 26, 1994. This appeal followed.

## II. *The District Court Decision*

In its order granting summary judgment, the court quoted

---

[3]This letter is not part of the record on appeal; the parties, however, do not dispute its existence or content, and other portions of the record support this characterization.

[4]The ARO relied, in part, on the following facts: (1) the store's owners had signed various applications accepting responsibility for compliance with the regulations and providing that the store could be held responsible for its employees' actions, and (2) there had been prior reported violations at the store, resulting in an official warning.

[5]*Holmes* is currently on appeal before this court (Case No. 94-7025). The stay order in *Holmes,* 815 F.Supp. 429, will be referred to herein as *Holmes I,* while the final disposition on the merits, 868 F.Supp. 1348, will be referred to as *Holmes II.*

*Holmes I:*

It is elemental in constitutional law that:

> Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law. *Black's Law Dictionary* 500 (6th ed. 1990); *accord, U.S. Department of Agriculture v. Murry,* 413 U.S. 508 [93 S.Ct. 2832, 37 L.Ed.2d 767] (1973); *Stanley v. Illinois,* 405 U.S. 645 [92 S.Ct. 1208, 31 L.Ed.2d 551] (1972).

Because the court has serious concern as to whether a statute which imposes strict liability on a store owner with no recourse to him or her to prove his or her innocence violates the due process clause of the Fifth Amendment of the Constitution, the court grants the stay pending resolution of this constitutional issue.

Mem.Op. at 2 (quoting *Holmes I,* 815 F.Supp. at 432). The district court then stated: "This court also believes that disqualifying the plaintiff from participating in the food stamp program is a deprivation of its property rights. Furthermore, the court believes that withholding the means by which the plaintiff store owners earn a livelihood is a violation of due process of law." *Id.*

The district court did not elaborate further on the rationale for its decision. The government contends that the district court erred because: (1) the administrative process and the district court's *de novo* review satisfy the minimum requirements of procedural due process; and (2) the imposition of the permanent disqualification penalty upon an "innocent" store owner does not

violate the owner's substantive due process rights. [6]  We address each contention in turn.[7]

### III. *Standard of Review*

"We review the district court's grant of summary judgment *de novo,* applying the same legal standards used by the district court."  *Parks v. City of Warner Robins,* 43 F.3d 609, 612 (11th Cir.1995).  Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

### IV. *Procedural Due Process*

"Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest."  *Zipperer v. City of Fort Myers,* 41 F.3d 619, 623 (11th Cir.1995).[8]

FNS regulations provide for multiple levels of informal agency review of alleged trafficking violations.  First, the appropriate

---

[6]Although the portion of *Holmes I* quoted by the district court could fairly be read as expressing concern only with procedural due process, *Holmes II* makes clear that the court was concerned about the substantive fairness of imposing strict liability on a store owner as well.  *See Holmes II,* 868 F.Supp. at 1350.

[7]We reject TRM's suggestion that the district court's opinion should be read as holding that there was insufficient proof of trafficking.  The opinion does not support this interpretation.

[8]For the purposes of this appeal, the government accepted, *arguendo,* the existence of a protected property right.  Because we hold that TRM's procedural due process rights were not violated, we need not decide whether continued participation in the food stamp program is a cognizable property right.

FNS office sends a charge letter to the firm specifying the violations or actions which the FNS believes constitute a basis for sanctions. *See* 7 C.F.R. § 278.6(b)(1).[9] The charge letter informs the firm that it has ten days to respond, either orally or in writing, to the charge, *id.,*[10] and in the case of a trafficking violation, the letter explains that a request for a CMP must be made within 10 days, or else it is deemed waived. *See* 7 C.F.R. § 278.6(b)(2). The appropriate FNS office then reviews the relevant information, including the store's submissions, if any, and determines the appropriate penalty. *See* 7 C.F.R. § 278.6(c)-(e). If the store is dissatisfied with the decision, it may appeal the determination to an ARO. *See* 7 C.F.R. §§ 278.8, 279.5, 279.6, 279.7. Such review may include an appearance in front of the ARO, as well as the submission of any information in support of the store's position. *See* 7 C.F.R. §§ 279.6(b), 279.7(b)-(d), 279.8(a). The ARO renders the final agency decision on the matter, notifying the firm by certified mail. 7 C.F.R. § 279.8(e).

As noted above, TRM fully availed itself of this administrative review process. Nevertheless, we need not decide whether the administrative review process alone sufficiently safeguarded TRM's right to be heard, because the statute provides TRM with a full hearing *de novo* in the district court. *See* 7

---

[9]The text reflects technical changes made to the FNS regulations since the 1994 C.F.R. was released. *See* 59 Fed.Reg. 29,711 (1994). Although these changes do not alter our analysis, we have adjusted the terminology where necessary.

[10]"The firm's response shall set forth a statement of the evidence, information, or explanation concerning the specified violations or acts." *Id.*

U.S.C. § 2023(a) ("The suit in the United States district court ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue....").[11]

This court's predecessor and other courts have held that the provision of a *de novo* hearing in the district court adequately protects an aggrieved store owner's procedural due process rights. *See Redmond v. United States,* 507 F.2d 1007, 1012 (5th Cir.1975)[12] ("By providing the aggrieved food store with a new trial where the store may introduce evidence outside the administrative record, the statute also protects the rights and interests of the store against final adverse action without the opportunity for an adversary hearing."); *see also Haskell v. United States Dep't of Agriculture,* 930 F.2d 816, 820 (10th Cir.1991) (when opportunity for *de novo* judicial review exists, lack of evidentiary hearing at the administrative level is not a denial of due process); *Ibrahim v. United States,* 834 F.2d 52, 54 (2d Cir.1987) ("trial de novo provision clearly afforded full procedural due process"); *McGlory v. United States,* 763 F.2d 309, 312 (7th Cir.1985) (per curiam) ("The due process argument fails because, once a participant seeks review de novo, the adequacy of the administrative process as an

---

[11]This is in contrast with the more deferential standards of review provided for in the Administrative Procedure Act, 5 U.S.C. § 706, which govern most agency findings. *See* 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.2 (1994).

[12]The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

abstract matter is no longer important.").[13]  Accordingly, we hold that TRM's procedural due process rights were not violated in this case.

## V. *Substantive Due Process*

The next issue is the whether the disqualification penalty can properly be imposed upon an "innocent" store owner, who neither knows of nor benefits from a store employee's trafficking.

### A.

In 1982, Congress amended the Food Stamp Act to provide for permanent disqualification upon the first trafficking offense.[14] *See* Omnibus Budget Reconciliation Act of 1982, Pub.L. No. 97-253, § 175, 1982 U.S.C.C.A.N. (96 Stat.) 763, 781.  In response to this harsh remedy, other circuits split over whether disqualification could be imposed against an innocent store owner.  *See Ghattas v. United States,* 40 F.3d 281, 283 (8th Cir.1994) (describing split). In 1988, however, Congress amended the Act to allow for the imposition of a civil monetary penalty, in lieu of the disqualification penalty, for trafficking violations

> if the Secretary determines that there is substantial evidence (including evidence that neither the ownership nor management of the store or food concern was aware of, approved, benefited from, or was involved in the conduct or approval of the violation) that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations....

---

[13]As the trial in the district court is *de novo,* there is no need to apply the test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), to measure the adequacy of the procedures.

[14]For the sake of simplicity, we refer to 7 U.S.C. §§ 2011-2031 collectively as the Food Stamp Act.

7 U.S.C. § 2021(b)(3)(B).[15]

The fact that the statute was amended to provide for a more lenient penalty for certain innocent store owners leads to the conclusion that innocent store owners who fail to meet the requirements for the imposition of a CMP may be permanently disqualified. *See Ghattas,* 40 F.3d at 283 n. 3 ("[U]nder the 1988 amendments ... a store may be sanctioned despite its owner's innocence."); *Goldstein v. United States,* 9 F.3d 521, 523-24 (6th Cir.1993) (FNS acted within its authority under the regulations by permanently disqualifying an allegedly innocent owner from food stamp program); *see also Freedman v. United States Dep't of Agriculture,* 926 F.2d 252, 258-60, 261 n. 13 (3d Cir.1991) (holding that a CMP can be imposed upon an innocent store owner and suggesting in dicta that an innocent store owner could be disqualified as well).

We conclude that Congress would not have provided a CMP as an alternative to permanent disqualification for innocent owners had it not felt that innocent owners could be disqualified under the Food Stamp Act.[16]

B.

In light of our determination that the statute allows for the permanent disqualification of innocent store owners, we next must

---

[15]The parenthetical directing the Secretary to consider certain evidence was added in 1990. *See* Food, Agriculture, Conservation, and Trade Act of 1990, Pub.L. No. 101-624, § 1743, 1990 U.S.S.C.A.N. (104 Stat.) 3359, 3795.

[16]The applicable regulation clearly provides that a firm can be permanently disqualified for an employee's actions. *See* 7 C.F.R. § 278.6(e)(1)(i). We need not decide whether this reflected a proper interpretation of the statute prior to 1988.

decide whether this provision violates such an owner's substantive due process rights.

Substantive due process claims not involving a fundamental right are reviewed under the rational basis test. *See, e.g., Parks v. City of Warner Robins,* 43 F.3d 609, 614-15 (11th Cir.1995) (reviewing under rational basis test anti-nepotism policy that did not directly and substantially interfere with the fundamental right to marry); *see also In re Wood,* 866 F.2d 1367, 1371 (11th Cir.1989) ("The standard for evaluating substantive due process challenges to social and economic legislation is virtually identical to the "rational relationship' test for evaluating equal protection claims.... *[A]ny* plausible reason supporting Congress' action in enacting the suspect legislation satisfies the "rational basis' test."); *Silver v. Baggiano,* 804 F.2d 1211, 1218 (11th Cir.1986) ("[I]n order to satisfy substantive due process requirements, the legislation must be rationally related to its purpose and must not be arbitrary or discriminatory.").[17]

The rational basis test is not a rigorous standard. As this court has explained:

> This test is generally easily met. A searching inquiry into the validity of legislative judgments concerning economic regulation is not required.... The task is to determine if "any set of facts may be reasonably conceived to justify' the legislation.... To put it another way, the legislation must be sustained if there is any conceivable basis for the legislature to believe that the means they have selected will tend to accomplish the desired end. Even if the court is convinced that the political branch has made an improvident,

---

[17]This standard is not affected by our decision in *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). The holding of that case was specifically limited to substantive due process challenges to non-legislative acts. *Id.* at 1557 n. 9, 1560.

ill-advised or unnecessary decision, it must uphold the act if it bears a rational relation to a legitimate governmental purpose.

*Cash Inn of Dade, Inc. v. Metropolitan Dade County,* 938 F.2d 1239, 1241 (11th Cir.1991) (reviewing local ordinance requiring pawn shop owners to close at 5:00 p.m.) (citations omitted).  Moreover, this court will consider "any rationale Congress "could' have had for enacting the statute ... regardless of whether Congress actually considered that rationale at the time the bill was passed." *United States v. Osburn,* 955 F.2d 1500, 1505 (11th Cir.), *cert. denied, --- U.S. ----, ----,* 113 S.Ct. 223, 290, 121 L.Ed.2d 160, 215 (1992).

Congress explained the general policy underlying the food stamp program:

> It is the declared policy of Congress, in order to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households.  Congress finds that the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households....  To alleviate such hunger and malnutrition, a food stamp program is ... authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.

7 U.S.C. § 2011.

As discussed above, Congress has prescribed harsh penalties for trafficking in food stamps. *See* 7 U.S.C. § 2021.  It is beyond dispute that the prevention of illegal trade in food stamps is a legitimate government purpose,[18] which itself serves the overarching purposes of the food stamp program.  Even as Congress considered

---

[18]The *Holmes II* court explained:  "The widespread sale of food coupons for cash was seen as undermining the goals of the program.  The purpose of the penalty was to deter and prevent trafficking activity and, thus, maintain the integrity of the food stamp program."  *Holmes II,* 868 F.Supp. at 1354.

mitigating the harshness of the disqualification penalty in 1988, the House Report acknowledged: "This is a strict policy. Sale of food stamps at a discount price or trading food stamps for non-food items is a serious offense. It violates the purpose of the food stamp program and harms needy families." H.R.Rep. No. 828, 100th Cong., 2d Sess., pt. 1, at 27 (1988). *See also* S.Rep. No. 504, 97th Cong., 2d Sess. 63-64 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1641, 1701-02 ("[T]he Committee adopted a stringent requirement that a store would be permanently disqualified upon a disqualification based on trafficking.... These increased penalties are designed to provide the deterrence for those stores that might be inclined to violate the law.").

The crucial inquiry is thus whether the imposition of strict liability on store owners rationally serves this purpose. We hold that it does.

The Supreme Court has recognized the logic and propriety of imposing vicarious liability in other contexts. *See Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 13-15, 111 S.Ct. 1032, 1041, 113 L.Ed.2d 1 (1991) (company's due process rights not violated by imposition of liability and exemplary damages under the doctrine *respondeat superior* for fraud of company's employee); *American Soc. of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (nonprofit association could be held liable and subjected to treble damages for antitrust violations committed by its agents acting within the scope of their apparent authority).

Making employers liable for an employee's intentional fraud

"creates a strong incentive for vigilance by those in a position "to guard substantially against the evil to be prevented.' " *Haslip,* 499 U.S. at 14, 111 S.Ct. at 1041 (quoting *Louis Pizitz Dry Goods Co. v. Yeldell,* 274 U.S. 112, 116, 47 S.Ct. 509, 510, 71 L.Ed. 952 (1927)). As the *Haslip* court explained, "[i]mposing liability without independent fault deters fraud more than a less stringent rule. It therefore rationally advances the State's goal." *Haslip,* 499 U.S. at 14, 111 S.Ct. at 1041.[19]

This court likewise has upheld the imposition of liability without proof of individual fault. *See, e.g., Armenia v. Dugger,* 867 F.2d 1370 (11th Cir.) (strict liability driving-while-intoxicated manslaughter statute held constitutional), *cert. denied,* 493 U.S. 829, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989); *United States v. Coastal States Crude Gathering Co.,* 643 F.2d 1125 (5th Cir. Unit A April 1981) (imposition of liability on discharging facility for third party's actions, regardless of fault, under the Federal Water Pollution Control Act Amendments of 1972, did not violate due process), *cert. denied,* 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981); *United States v. Ayo-Gonzalez,* 536 F.2d 652, 658-62 (5th Cir.1976) ("proof of culpability or fault was neither statutorily nor constitutionally necessary" to sustain a conviction for illegally fishing in United States contiguous fishing zone), *cert. denied,* 429 U.S. 1072, 97

---

[19]*Haslip* was decided under the Fourteenth Amendment's due process clause. Because the challenge here is to federal action, the Fifth Amendment governs. This does not, however, affect our analysis.

S.Ct. 808, 50 L.Ed.2d 789 (1977).[20]

The imposition of liability on innocent store owners for their employees' trafficking violations is a rational method of deterring illegal food stamp trade. Such a policy promotes the prophylactic implementation of employee-training procedures and encourages store owners to supervise their agents. Moreover, the provision for an alternative civil monetary penalty in certain instances is a further incentive for close supervision. Congress could rationally have concluded that a store owner who risks losing the ability to accept food stamps is more likely to be vigilant and vigorous in the prevention of employee trafficking. In contrast, limiting liability in these cases would have the perverse effect of encouraging store owners' willful blindness of their employees' transgressions, and would deprive owners of the incentive to invest in precautionary anti-trafficking measures.

For the reasons set forth above, we hold that the imposition of vicarious liability upon innocent store owners does not violate a store owner's substantive due process rights.[21]

Accordingly, we REVERSE the district court's order granting summary judgment in favor of TRM, and REMAND for the completion of the trial *de novo* in the district court pursuant to 7 U.S.C. §

---

[20]Although strict liability and vicarious liability are distinct concepts, they are discussed together herein as they both can involve the imposition of liability upon an "innocent" actor.

[21]In a footnote to its reply brief, the government notes that TRM accepted responsibility for its employees' actions in a food stamp program application. We do not address the issue of whether TRM "waived" its right to argue against the imposition of vicarious liability, as it was not considered by the district court in the first instance.

2023.[22]

REVERSED and REMANDED.

---

[22]Although it appears that the district court conducted an evidentiary hearing as to whether to grant the stay order, it is unclear from the record whether the court had completed the necessary fact-finding to render a final judgment on the merits.