[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 96-3276

D. C. Docket No. 94-40422-WS

THOMAS ROWE SCHWARZ,

Plaintiff-Appellant,

versus

GERALD KOGAN,

Defendant-Appellee,

and

FLORIDA BAR FOUNDATION,

Defendant-Appellee-Intervenor.

Appeal from the United States District Court
for the Northern District of Florida

**(January 12, 1998)**

Before TJOFLAT, BIRCH and MARCUS*, Circuit Judges.

*Honorable Stanley Marcus was a U.S. District Judge of the Southern
District of Florida sitting by designation as a member of this
panel when this appeal was argued and taken under submission. On
November 24, 1997 he took the oath of office as a United States
Circuit Judge of the Eleventh Circuit.

MARCUS, Circuit Judge:

This lawsuit arises out of a rule of professional responsibility enacted by the Supreme Court of Florida for the purpose of regulating the conduct of members of the Florida Bar. The rule, in pertinent part, requires Bar members to report their compliance with certain aspirational goals regarding the provision of legal services to the poor. Plaintiff-Appellant Thomas Rowe Schwarz, an attorney and member of the Florida Bar proceeding pro se, filed this action against the Chief Justice of the Supreme Court of Florida, essentially seeking declaratory and injunctive relief precluding enforcement of the rule. Schwarz asserts, among other things, that the rule denies him rights guaranteed by the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution. The district court granted a motion for summary judgment filed by Defendant-Appellees Gerald Kogan (the current Chief Justice of the Florida Supreme Court) and the Florida Bar Foundation. Schwarz now appeals that decision, and asks us to vacate the order and remand with instructions to enter summary judgment in his favor. For the reasons stated below, we find his argument unconvincing, and therefore affirm the district court's rulings.

I.

This appeal concerns Rule 4-6.1 of the Rules Regulating the Florida Bar. The Rule, which is captioned " Pro Bono Public

Service," was adopted by the Florida Supreme Court in June of 1993 after a lengthy review and comment process, pursuant to its exclusive jurisdiction "to regulate the admission of persons to the practice of law and the discipline of persons admitted." Fla. Const. art. V, §15. Section (a) of the Rule reads as follows:

> Each member of The Florida Bar in good standing, as part of that member's professional responsibility, should (1) render pro bono legal services to the poor or (2) participate, to the extent possible, in other pro bono service activities that directly relate to the legal needs of the poor. This professional responsibility does not apply to members of the judiciary or their staffs or to government lawyers who are prohibited from performing legal services by constitutional, statutory, rule or regulatory prohibitions [].[1]

Section (b) of the Rule provides a critical gloss on this provision, by making clear that the obligation recognized by section (a) is "aspirational rather than mandatory in nature," and therefore "failure to fulfill one's professional responsibility under this rule will not subject a lawyer to discipline" (emphasis in original). Nevertheless, section (b) goes on to state that compliance with section (a) may be established in one of two ways: through the annual provision of 20 hours of pro bono legal services to the poor, or an annual contribution of $350 to a legal aid organization.

The crux of this appeal is section (d) of the Rule, which requires Florida Bar members to report, in conjunction with their

---

[1]Also exempt are retired, inactive and suspended Bar members. Schwarz does not challenge the appropriateness of an exemption for these categories of Florida lawyers.

annual dues statement, whether they have complied with the aspirational goals of section (a) or, in the alternative, qualify for an exemption. Specifically, section (d) begins by stating that "[e]ach member of the bar shall annually report whether the member has satisfied the member's professional responsibility to provide pro bono legal services to the poor." It then explains that "[e]ach member shall report this information through a simplified reporting form that is made part of the member's annual dues statement." The form contains the following inquiries, at least one of which must be answered or highlighted by the member:

> (1) I have personally provided _____ hours of pro bono legal services;
>
> (2) I have provided pro bono legal services collectively by: (indicate type of case and manner in which service was provided);
>
> (3) I have contributed _____ to: (indicate organization to which funds were provided);
>
> (4) I have provided legal services to the poor in the following special manner: (indicate manner in which services were provided); or
>
> (5) I have been unable to provide pro bono legal services to the poor this year; or
>
> (6) I am deferred from the provision of pro bono legal services to the poor because I am: (indicate whether lawyer is: a member of the judiciary or judicial staff; a government lawyer prohibited by statute, rule or regulation from providing services; retired or inactive).

While a Bar member's failure, or unwillingness, to honor the aspirational pro bono goals in the manner prescribed in section (b) will not expose him to professional discipline, failure to comply

3

with the reporting requirement "shall constitute a disciplinary offense under these rules" and may trigger professional discipline by the Florida Supreme Court. Precisely what discipline the lawyer may face is unclear, since no lawyer has actually been sanctioned for violating Rule 4-6.1. A Bar member's report of his compliance or non-compliance with the aspirational goals of the Rule can be reviewed, upon request, by the public.

In May of 1994, Schwarz filed a petition with the Florida Supreme Court, asking that the pro bono rule be stayed and then revoked. The petition, in two instances, referred to Rule 1-12.1 of the Rules Regulating the Florida Bar. Then-Chief Justice Grimes directed that the petition be returned without filing. The Appellant was notified of this ruling through a letter signed by the Clerk of Court; the letter, dated May 24, 1994, advised Schwarz that he "must comply with Rule 1-12.1(f)" of the Rules Regulating the Florida Bar before the petition would be considered. Rule 1-12.1(f), among other things, states that "[o]nly the Supreme Court of Florida shall have the authority to amend" the Rules Regulating the Florida Bar. Rule 1-12.1(f) also creates certain procedural hurdles that must be cleared before a petition seeking the amendment of a Rule will be considered by the Florida Supreme Court. A petition may, for example, be filed only by the board of governors of the Florida Bar, or by 50 members in good standing so long as the proposed amendment is submitted beforehand to the Bar. Subsection (i), though, contains a proviso stating that "[o]n good cause shown, the [Florida Supreme Court] may waive any or all of

4

the provisions of [Rule 1.12.1]."

With his petition rejected, Schwarz, in June of 1994, filed this lawsuit pursuant to 42 U.S.C. §1983 in the Southern District of Florida (the case was later transferred to the Northern District of Florida). The district court granted a motion to intervene by the Florida Bar Foundation, and eventually substituted the current Chief Justice of the Florida Supreme Court (Kogan) for the former Chief Justice and original Defendant (Grimes). Schwarz sought preliminary injunctive relief precluding the Florida Supreme Court from disciplining any Bar member who failed to comply with the reporting requirement created by Rule 4-6.1(d). The Appellees, however, agreed to refrain from initiating disciplinary action for non-compliance with the reporting requirement during the pendency of this lawsuit. On March 10, 1995, the presiding district judge denied Schwarz's motion to disqualify "all sitting District Judges and Magistrates serving in the United States District Court for the Northern District of Florida" from hearing the case. The motion was premised on the argument that judges who are also Florida Bar members have a "direct personal, professional, and financial interest in the outcome of this cause." The parties subsequently filed cross-motions for summary judgment based upon a largely stipulated record. The summary judgment motions were referred to the assigned United States Magistrate Judge, who, on December 15, 1995, issued a lengthy report and recommendation. The magistrate judge recommended that the Appellees' motion be granted and the Appellant's motion be denied. Schwarz filed objections to the

5

report; on August 9, 1996, however, the district court entered a brief order adopting the magistrate's recommendations and overruling the Appellant's objections.  Judgment was entered on August 12, 1996.

After this appeal was docketed, the Florida Supreme Court issued a per curiam opinion rejecting certain amendments to Rule 4-6.1 proposed by the Florida Bar.  Amendments to Rule 4-6.1 of the Rules Regulating the Florida Bar — Pro bono Public Service, 696 So. 2d 734 (Fla. 1997).  The opinion, dated May 22, 1997, denied the Bar's application to amend the Rule by replacing the mandatory reporting requirement with a provision that would have made reporting largely voluntary.  Schwarz, the Appellant here, is identified as one of the counsel of record for those arguing in favor of dropping the reporting requirement.

On appeal, Schwarz raises only some of the arguments he presented to the district court.  He asserts that the reporting requirement of Rule 4-6.1(d) converts the aspirational goals of section (a) into a mandatory component of Bar membership, thereby making the Rule unconstitutional under this Circuit's substantive due process and equal protection jurisprudence.  He also contends that the Rule amounts to an unconstitutional taking of his private property, and insists that the Florida Supreme Court denied him a constitutional right of access to courts by rejecting the petition that he submitted in May of 1994.  In addition, Schwarz renews his argument that federal judges who are Florida Bar members and are exempt from Rule 4-6.1's aspirational pro bono goals should be

6

disqualified from hearing this lawsuit.

                              II.

The parties agree on the appropriate standards of review.  A district judge's refusal to disqualify himself is reviewed for abuse of discretion.  United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989).  All other issues in this appeal are questions of law that must be considered de novo.  See, e.g., United States v. Johns, 984 F.2d 1162, 1163 (11th Cir. 1993).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

                              III.

We begin our analysis of Schwarz's constitutional arguments (the only arguments that warrant any meaningful discussion) by addressing his apparent view that Rule 4-6.1, on its face, denies him rights guaranteed by the Due Process clause of the Fourteenth Amendment.  Substantive due process challenges that do not implicate fundamental rights are reviewed under the highly deferential "rational basis" standard.  See, e.g., TRM, Inc. v. United States, 52 F.3d 941, 945 (11th Cir. 1995).[2]  In order to

---

[2]Although Schwarz suggests in passing that we apply the more demanding "strict scrutiny" test to our examination of Rule 4-6.1, he provides absolutely no support for his position.  Indeed, this Circuit has indicated that there is no fundamental right to practice law, let alone to practice law free of any obligation to provide pro bono legal services to the poor.  See, e.g.,

survive this minimal scrutiny, the challenged provision need only be rationally related to a legitimate government purpose. Id. (citing Silver v. Baggiano, 804 F.2d 1211, 1218 (11th Cir. 1986)). In other words, if there is any conceivably valid justification for Rule 4-6.1, and if there any plausible link between the purpose of the Rule and the methods selected to further this purpose, then no violation of substantive due process exists. See, e.g., id.

The Florida Supreme Court undoubtedly has a legitimate interest in encouraging the attorneys it has licensed to practice in the State of Florida to perform pro bono legal services as one aspect of their professional responsibility. We have recognized that states have an "especially great" interest in regulating lawyers, since "'lawyers are essential to the primary government function of administering justice.'" Kirkpatrick, 70 F.3d at 103 (citation omitted). Due to the unique and important role of the legal profession in this country, the free provision of legal services to the poor has long been recognized as an essential component of the practice of law. In Waters v. Kemp, 845 F.2d 260, 263 (11th Cir. 1988), for example, this Circuit emphasized that one of the traditions of the legal profession is that a lawyer, as an officer of the court, is "obligated to represent indigents for

_____

Kirkpatrick v. Shaw, 70 F.3d 100, 103 (11th Cir. 1995) (per curiam) (holding that rational basis review is the appropriate standard for classifications affecting the admission of applicants to the bar); Jones v. Board of Commissioners, 737 F.2d 996, 1000-01 (11th Cir.) (same finding with respect to equal protection and substantive due process challenges to rules limiting the number of times an applicant could sit for the bar), reh'g denied, 745 F.2d 72 (1984).

8

little or no compensation upon court order." <u>Accord</u>, <u>United States v. Accetturo</u>, 842 F.2d 1408, 1412-13 (11th Cir. 1988). Similarly, in <u>Mallard v. United States District Court</u>, 490 U.S. 296, 310, 109 S. Ct. 1814, 1823, 104 L. Ed. 2d 318 (1989), the Court commented that at a "time when the need for legal services is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills <u>pro</u> <u>bono</u> <u>publico</u> is manifest." The Florida Supreme Court, when it approved the drafting of what became Rule 4-6.1, acknowledged precisely these points, finding it "important for an independent legal profession to provide a portion of indigent representation to ensure proper challenge against government violations of individual rights," as well as to ensure that basic legal representation is available to "all segments of society." <u>In re Amendments to Rules Regulating the Florida Bar</u>, 598 So. 2d 41, 43 (Fla. 1992). More recently, the court justified its retention of the reporting requirement in part by observing that "[l]awyers have been granted a special boon by the State of Florida — they in effect have a monopoly on the public justice system. In return, lawyers are ethically bound to help the State's poor gain access to that system." 696 So. 2d at 735.

There is plainly an adequate nexus between the establishment of aspirational <u>pro</u> <u>bono</u> goals for members of the Florida Bar and the Florida Supreme Court's legitimate interest in encouraging Bar members to provide legal services to the indigent. Schwarz does not, and cannot, dispute that there is a powerful, documented need

9

to broaden and improve the scope of legal representation available to the poor.  The choice of a not terribly onerous goal of twenty hours of pro bono service per year advances the Florida Supreme Court's interest in at least two ways.  It supplies individual Bar members with a benchmark for evaluating how many hours of pro bono work they should be performing, while at the same time suggesting that a lawyer's professional responsibility to perform legal services for the poor may easily be integrated with other tasks that draw on an attorney's time and energy.

Schwarz nevertheless insists that permitting Bar members to comply with their professional responsibility by making a financial contribution to a legal aid society, instead of personally or collectively performing tangible legal services, makes the Rule arbitrary and capricious.  We disagree.  It was rational for the Florida Supreme Court to conclude that, since some attorneys inevitably will not or cannot devote twenty hours to pro bono legal work, giving these attorneys the option of satisfying their professional responsibility by donating funds to a legal services organization — under circumstances where they might otherwise do nothing — both maintains respect for the Rule and furthers its ultimate purpose of increasing the availability of legal services to the poor.  Moreover, the selection of $350 as the appropriate amount was not irrational, since a larger amount might discourage voluntary contributions or encourage a perception that this provision benefits only wealthy attorneys.  There are, admittedly, reasonable arguments against this aspect of the Rule.  See, e.g.,

10

630 So. 2d at 506 (Barkett, J., specially concurring) (suggesting an "inherent inequality when those who cannot pay are asked to provide twenty hours of work, and those with money can 'buy out' for the value of a few hours").  Our task, however, is not to evaluate whether the justifications for this portion of the Rule are more or less persuasive than any arguments to the contrary; we may ask only if there is a "conceivable basis"  for allowing Bar members to substitute a legal aid contribution of $350 for a donation of legal services.  There is an entirely rational basis for this provision, especially since nothing in the Rule requires Bar members to donate either time <u>or</u> money to the indigent.

We also conclude that there is a constitutionally sound basis for expecting Bar members to report their compliance with the Rule's aspirational goals.  In its opinion approving Rule 4-6.1, the Florida Supreme Court explained that it believed "accurate reporting is essential for evaluating th[e <u>pro</u> <u>bono</u>] program . . . for determining what services are being provided under the program . . . [and] determin[ing] the areas in which the legal needs of the poor are or are not being met."  630 So. 2d at 502-03. In its recent opinion rejecting amendments that would have eliminated the reporting requirement, the court again emphasized that "accurate reporting is essential for evaluating the delivery of legal services to the poor and for determining where such services are not being provided."  696 So. 2d at 735.  Indeed, said the court, "[t]here is no more effective way to gauge the success of lawyers in meeting their obligation to represent the poor — an obligation

11

every member of the Bar swears to undertake." Id. It was rational for the Florida Supreme Court to conclude that requiring Bar members to report their compliance with the Rule's aspirational pro bono goals both encourages lawyers to honor these goals and provides the Court with a pool of information that might lend some insight into what, if any, additional measures are needed to help the poor obtain counsel and secure access to the courts.

Schwarz nevertheless contends that the reporting requirement fails to withstand rationality review, because the effect of this requirement is to convert the aspirational goals of sections (a) and (b) into mandatory obligations for most Bar members. In essence, Schwarz contends that, since a failure to perform pro bono legal services or contribute to a legal aid society must be reported to the Florida Supreme Court, and this information, in turn, must be made available to the Bar and the public, private lawyers are implicitly coerced into satisfying the Rule's aspirations in order to preserve their professional "honor" and ability to climb the professional and political ladder. There are several clear flaws with this argument. To begin with, Schwarz has not established a persuasive evidentiary foundation for his speculation that Bar members, in order to avoid the possibility of social and professional scorn, have been compelled to do what they otherwise lack the time, inclination or resources to do. Neither section (d) nor any other provision in Rule 4-6.1 makes a Florida lawyer's non-compliance with the aspirational goals outlined in sections (a) and (b) a basis for professional discipline. And even

12

assuming that the reporting requirement may have some implicit coercive effect, and thereby motivates otherwise reluctant lawyers to honor their professional responsibility, this result justifiably furthers the Rule's legitimate purpose.[3] The Florida Supreme Court expressly considered and rejected Schwarz's "peer pressure" argument at the time it adopted Rule 4-6.1, see 630 So. 2d at 505, and the explanations set forth in that ruling, and reiterated before us now, are constitutionally adequate.

Schwarz's next argument is that the exemption for judges, their staff and certain government lawyers in Rule 4-6.1(a) violates the Equal Protection clause. Equal Protection challenges that do not implicate certain fundamental rights or concern "suspect classifications" are subject only to the same rational basis analysis used for most substantive due process claims. See, e.g., TRM, 52 F.3d at 945; Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995). The Florida Supreme Court's disparate treatment of certain categories of Florida Bar members, therefore, withstands minimal scrutiny if "'any state of facts reasonably may be conceived to justify it.'" D.W. v. Rogers, 113 F.3d 1214, 1219 (11th Cir. 1997) (citation omitted).

Schwarz contends that exempting judges, their staff and government lawyers "who are prohibited from performing legal

_____

[3]Of course, while compliance with Rule 4-6.1(d) is required in the sense that "failure to report this information shall constitute a disciplinary offense under [the Rules Regulating the Florida Bar]," it is unclear, on this record, what, if any, sanctions might befall a Bar member who elects not to supply the requested information.

13

services by constitutional, statutory, rule or regulatory prohibitions" from the Rule's aspirational goals, while applying these goals to other Bar members who are not retired, inactive or suspended, is arbitrary and capricious.[4] This argument must fail. As the Florida Supreme Court explained in its opinion adopting Rule 4-6.1, there are clear ethical constraints on the ability of judges and law clerks who are Florida Bar members to engage in the practice of law. 630 So. 2d at 503 (listing provisions in the Florida Constitution, the Code of Judicial Conduct adopted by the Florida Supreme Court and the state's Rules of Judicial Administration that prohibit or restrict the practice of law by judges and clerks); see also Committee on Codes of Conduct, Judicial Conference of the United States, Code of Conduct for United States Judges, Canon 5(f) (March, 1997) (stating that "[a] judge should not practice law"). The court explained that "[t]hese prohibitions are designed partially to prevent judges and their staffs from taking time away from their judicial duties [but more importantly] to prevent them from placing themselves in positions where their actions could directly be influenced by matters that could come before them or could provide the appearance that certain parties might be favored over others." 630 So. 2d at 503-04. Accordingly, rather than place these individuals in a position

_____

[4]Section (a) of Rule 4-6.1 states that the professional responsibility recognized by the Rule "does not apply" to these individuals, although in its opinion adopting the Rule, the Florida Supreme Court indicated that it was merely deferring the obligation of these individuals to participate in the pro bono program. 630 So.2d at 504.

14

where they had to navigate between conflicting ethical obligations and likely decide against honoring the Rule, the court <u>rationally</u> concluded that the wiser course was to exempt these individuals from the Rule's aspirational goals and concentrate instead on encouraging full compliance by private lawyers.  The court found that myriad ethical constraints, as well as the "limited availability of staff and lack of malpractice insurance," also affected the ability of government attorneys to honor the Rule's aspirational goals.  Even so, the Rule approved by the court does not state that <u>all</u> government lawyers are exempt; rather, only those government lawyers who are "prohibited" from providing legal services are relieved of an obligation to aspire to perform twenty hours of pro bono work or contribute $350 to a legal aid society. We certainly cannot say that the Florida Supreme Court's decision to defer this limited group of Florida Bar members from the professional responsibility defined in section (a) was irrational.

Schwarz contends that, at the very least, it was irrational for the court not to have required judges and their clerks, let alone government attorneys, to "aspire" to make an annual $350 contribution to a legal aid group.  We are unpersuaded.  The same concerns that underlie the prohibitions on the private practice of law by these individuals may caution against encouraging them to contribute money to organizations servicing the legal needs of indigents and representing the poor in litigation. <u>See</u>, <u>e.g.</u>, Code of Conduct for United States Judges, Canon 5(C)(1) ("A judge should refrain from financial and business dealings that tend to reflect

15

adversely on the judge's impartiality, interfere with the proper performance of judicial duties . . . or involve the judge in frequent transactions with lawyers or other persons likely to come before the court in which the judge serves").  While the Florida Supreme Court might well have broadened the types of activities listed in section (b) of the Rule in order to encompass activities that advance the principles of pro bono service without running afoul of the ethical and practical constraints on judges and government attorneys eager to further these principles, surely there exists a rational basis for the court's conclusion that the overall interests of the Bar, and the indigent, were best served by limiting the ways in which non-exempt Bar members might satisfy their professional responsibility.  Consequently, the Florida Supreme Court's decision to "defer" members of the judiciary, their staffs and some, but not all, government lawyers from the aspirational goals of Rule 4-6.1 easily survives Schwarz's equal protection and substantive due process objections.

IV.

In short, we conclude that the district court properly granted the Appellees' motion for summary judgment and properly rejected the cross-motion filed by Schwarz.  Rule 4-6.1 of the Rules Regulating the Florida Bar withstands minimal scrutiny under this Circuit's substantive due process and equal protection jurisprudence, and the Appellant's other arguments merit little

16

discussion.[5]  Accordingly, the judgment of the district court must

---

[5]Schwarz maintains that the Florida Supreme Court denied him
a right of "access to courts" guaranteed by the Fourteenth
Amendment when the Clerk of that court returned his petition to
eliminate the reporting requirement of Rule 4-6.1.  The petition,
says Schwarz, presented state and federal constitutional
arguments against the Rule, and sought to invoke the court's
adjudicatory as opposed to rule-making powers.  According to
Schwarz, the court mistakenly treated the petition as one seeking
to amend the Rule, and in so doing deprived him of a right to
litigate his constitutional objections in a Florida, as opposed
to federal, proceeding.

It is far from clear that Schwarz sought to invoke the
Florida Supreme Court's adjudicative powers.  The petition, among
other things, expressly referred to Rule 1-12 (which governs
amendments to the Rules Regulating the Florida Bar), and sought
"revocation" of the rule rather than declaratory or injunctive
relief.  But even assuming that the court erred in its
application of Rule 1-12 to the petition, there is another, more
fundamental flaw in the Appellant's position.  To be specific, he
has made no showing that then-Chief Justice Grimes completely and
unequivocally denied him his ability to pursue in the Florida
courts a constitutional challenge to enforceability of Rule 4-
6.1.  Although the Appellees take the position that the Florida
Supreme Court is the only Florida tribunal that might have
jurisdiction to consider a facial constitutional attack on a rule
propounded by that body, see Appellees' Brief, at 17 (citing
State v. McCall, 301 So. 2d 774, 775) (Fla. 1973)), they insist
that Schwarz could have sought to invoke the court's authority to
issue writs.  They observe that section 3(b)(7) of Article V of
the Florida Constitution gives the court jurisdiction over
petitions for "all writs necessary to the complete exercise of
its jurisdiction."  In State ex rel. Chiles v. Public Employees
Relations Commission, 630 So. 2d 1093 (Fla. 1994), a case which
arose out of an attempt to secure a writ prohibiting the
certification of a bargaining unit for state-employed attorneys,
the court emphasized that the state constitution "vests [us] with
the 'exclusive jurisdiction to regulate the admission of persons
to the practice of law and the discipline of persons admitted,'"
and accordingly "[b]ecause the regulation of attorneys falls
within the Court's ultimate power of review, the all writs clause
could arguably be invoked as a basis for this Court's
jurisdiction" over the lawsuit.  Id. at 1095.  In light of this
language, and the pertinent provisions of the state constitution,
it cannot be said that it would have been wholly futile for
Schwarz to have attempted to invoke the Florida Supreme Court's
original jurisdiction.  Moreover, it is possible that, had
Schwarz subsequently filed a petition that complied with Rule 1-

17

12, or at least sought a waiver of the procedural limitations of that Rule, the court might have addressed his constitutional arguments wearing its "adjudicatory" hat as well as, or in lieu of, its "rule-making" hat.  What seems clear, therefore, is that the rejection of the petition filed by Schwarz in May of 1994 does not, standing alone, support the proposition that any constitutional right of access to courts has been infringed.  It is also worth noting that the Florida Supreme Court recently considered both state and federal constitutional arguments against the reporting requirement in its opinion rejecting the Bar's proposal to amend this portion of the Rule.  696 So. 2d at 735.

        Schwarz's next suggestion that Rule 4-6.1 amounts to a taking of his property without just compensation, in violation of the Fifth and Fourteenth Amendments, is equally unavailing, for any number of reasons.  Among other things, the Rule plainly does not "take" the property of Florida Bar members; compliance with the aspirational pro bono goals set out in section (b) is altogether voluntary.  See Cone v. State Bar of Florida, 819 F.2d 1002, 1007 (11th Cir.) (sustaining Florida Bar's IOTA program against a Taking Clause challenge since "there was no taking of any property of the plaintiff"), cert. denied, 484 U.S. 917, 108 S. Ct. 268, 98 L. Ed. 2d 225 (1987).  Moreover, even if Schwarz could frame a viable takings challenge on this record (and he plainly cannot), he has failed to establish that he has exhausted whatever state remedies that might be available to him.  See Bickerstaff Clay Products Co., Inc. v. Harris County, 89 F.3d 1481, 1490-91 (11th Cir. 1996) (discussing the ripeness requirement for Takings Clause claims).

        Finally, we are not persuaded by the Appellant's argument that all federal judges who are members of the Florida Bar and are "deferred" from the aspirational pro bono goals of Rule 4-6.1 must disqualify themselves from hearing this lawsuit.  Section 455 of Title 28 of the United States Code describes the circumstances where federal judges or magistrates "shall" recuse themselves.  Section 455(a) provides that judges shall disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned."  See Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988), cert. denied, 490 U.S. 1066, 109 S. Ct. 2066, 104 L. Ed. 2d 631 (1989).  Section 455(b) adds that disqualification is required when the judge "knows that he . . . has a financial interest in the subject matter in controversy . . . or any other interest that could be substantially affected by the outcome of the proceeding."  Schwarz insists that federal judges and magistrates who are Florida Bar members have a "personal and professional" stake in preserving the exemption that the Florida Supreme Court has, at least temporarily, carved

18

be, and is,

AFFIRMED.

---

out for them.  Schwarz also asserts that members of the judiciary have a direct financial interest in preserving the exemption, since the Rule effectively relieves judges of any obligation to perform 20 hours of pro bono work or contribute $350 to a legal aid society.  But judges, like other Florida Bar members, are not obliged to provide any pro bono services or contribute any money to legal aid groups.  Nor do judges have a meaningful "professional" interest in preserving the language of the Rule, since accepted canons of judicial conduct would continue to constrain the ability of judges to honor the Florida Supreme Court's aspirational goals even if members of the judiciary were required to disclose their non-compliance.

19