**BON SUPERMARKET & DELI, Ton Im and Chong Im, co-owners, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 4:99CV71.**

United States District Court, E.D. Virginia, Newport News Division.

March 6, 2000.

Larry D. King, Newport News, VA, for plaintiffs.

Kent P. Porter, Assistant U.S. Attorney, United States Attorney's Office, Norfolk, VA, for defendant.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiffs brought suit in this court challenging the decision of the United States Department of Agriculture, Food and Nutrition Services ("FNS"), to disqualify Bon Supermarket & Deli ("Bon") from participation in the federal food stamp program, as outlined by the Food Stamp Act, 7 U.S.C. § 2011–2036 (1994). This matter comes before the court on defendant's motion for summary judgment.[1] For the reasons set forth below, the motion for summary judgment is **GRANTED.**

*I. Factual and Procedural Background*[2]

Bon Supermarket & Deli, located in Hampton, Virginia, is co-owned by plain-

1. On October 5, 1999, defendant filed a motion to dismiss, or in the alternative, for summary judgment, and attached a certified copy of the entire agency file with its motion. Plaintiffs failed to respond to the motion. Based on the caption alone, plaintiffs were on notice that this motion might be treated as one for summary judgment. *See Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 260–61 (4th Cir.1998). Furthermore, when "matters outside the pleading are presented to and not excluded by the court, the [12(b)(6) ] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). While a district court clearly has an "obligation to notify parties regarding any court-instituted changes in the pending proceed-

ings, it does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261. The court rules on defendant's motion for summary judgment.

2. The facts are taken from the United States' Statement of Facts submitted in compliance with Local Rule 56(B) of the United States District Court for the Eastern District of Virginia. Plaintiffs have not submitted a responding motion as required by Local Rule 56(A) and 7(E). Therefore, all facts properly asserted by the United States in its Statement of Facts are admitted. *See* Local Rule 56(B). For a more detailed discussion of plaintiffs' failure to respond and the subsequently admitted facts, see *infra* notes 6 & 7 and accompanying text; Section II at 9–13.

tiffs Ton Im and Chong Im. In 1991, Bon was approved for participation in the food stamp program, and was subsequently re-authorized as a suitable vendor in 1993. In February, 1996, the United States Department of Agriculture, Office of Inspector General (USDA, OIG), initiated an investigation of Bon and the Ims based upon information received from the Virginia Department of Alcoholic Beverage Control that food stamp recipients were exchanging food stamps for alcohol.

Between February 22, 1996, and March 12, 1996, the USDA, OIG conducted an investigation of Bon and its employees' compliance with the rules and regulations governing participation in the food stamp program. On February 22, 1996, Special Agent Joseph S. Johnson of the Virginia Department of Alcoholic Beverage Control, provided a female working under his supervision $205.00 in food stamps and asked her to try to sell the food stamps for him at Bon in exchange for a six-pack of Zima malt liquor. The female entered Bon and approached an employee working behind the counter, showed the employee the four books of food stamps, and then went to a cooler to retrieve the six-pack of Zima. The female returned to the counter and gave four books of food stamps to the employee. The employee rang up the sale and gave $104.00 cash in change which the female turned over to Agent Johnson after leaving Bon. The female was observed at all times during the transaction by Agent Johnson.

On March 6, 1996, Agent Johnson provided the same female involved in the February 22, 1996, transaction $205.00 in food stamps and asked her to try to sell the food stamps for him at Bon in exchange

for cash, without any additional purchase. The female entered Bon, went to the counter, approached the same employee involved in the February 22, 1996, transaction, and gave him four books of food stamps. The employee was observed opening the register, placing the food stamps inside, and then handing the female $110.00 in cash, which she turned over to Agent Johnson upon leaving Bon.

A little less than a week later, on March 12, 1996, Agent Johnson provided the same female involved in the two prior controlled transactions $220.00 in food stamps. Again, the female was asked only to attempt to sell the food stamps in exchange for cash, without any additional purchase. The female entered Bon and approached the same clerk involved in the two previous controlled transactions. The female gave the clerk the food stamps and received $115.00 in cash from the clerk in return.

On March 24, 1996, three felony warrants of arrest were issued for Ton Im, Bon's co-owner, for unauthorized use of food stamps in violation of Virginia Code § 63.1–124 [3] in relation to the February 22, 1996, March 6, 1996, and March 12, 1996, transactions described above. The charges were reduced to misdemeanors pursuant to a plea agreement, on October 26, 1998, and Tom Im entered "*Alford* Pleas" [4] on all three counts in the General District Court for the City of Hampton.

On January 12, 1999, FNS issued an administrative charge letter charging Bon with "trafficking" food stamps—selling ineligible items in exchange for food stamps and accepting food stamps in exchange for cash, in violation of 7 C.F.R. § 278.2(a).

---

**3.** That section provides, in relevant part: "Whoever knowingly and with intent to defraud transfers, acquires, alters, traffics in or uses, or aids or abets another person in transferring, acquiring altering trafficking in, using or possessing food stamps ... in a manner not authorized by law shall be deemed guilty of larceny." Va.Code § 63.1–124.

**4.** An "*Alford* Plea" is a plea made according to the rule of law articulated in *North Car-*

*olina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An "*Alford* Plea" is one where a defendant "maintains innocence while entering a plea of guilty because the defendant concludes that his interest requires entry of a guilty plea and the record before the court contains strong evidence of actual guilt." *Cortese v. Black,* 838 F.Supp. 485, 492 (D.Colo.1993) (*citing Alford,* 400 U.S. at 37, 91 S.Ct. 160).

Plaintiffs were advised that they were being considered for permanent disqualification from the food stamp program because of the seriousness of the charges. Furthermore, plaintiffs were told that they could respond, either orally or in writing, to the charges by "providing any information, explanation, or evidence" to the officer-in-charge within ten days of receipt of the letter.

In the same letter, plaintiffs were advised that they may be eligible for a civil monetary penalty in lieu of permanent disqualification. FNS explained that such a request must be submitted, along with supporting evidence that the store had an effective policy and program to prevent trafficking pursuant to 7 C.F.R. § 278.6(i), within ten days after the store received the charge letter indicating that FNS was considering disqualification.

Two days after receiving the letter, on January 14, 1996, Ton Im, one of Bon's co-owners and a plaintiff herein, contacted the officer-in-charge, Katrina Ward, and explained that he did not know what happened, and that, furthermore, he did not commit the violation. Thereafter, on February 4, 1999, plaintiffs, through their attorney, responded to the charge letter denying the trafficking allegations on behalf of Mr. Im. Furthermore, the attorney argued that Mr. Im wanted to "keep his options open for continued participation" in the food stamp program, and requested an "opinion regarding a civil penalty." (Statement of Fact ¶ 12). No additional evidence concerning the violations was tendered. However, plaintiffs never made a formal request for, nor did they timely submit documentation as required by 7 C.F.R. § 278.6(i) for, a civil monetary penalty to be considered in lieu of permanent disqualification. After reviewing the evidence before it, the FNS ultimately determined that the trafficking violations set forth in the charge letter of January 12, 1999, had indeed occurred. On February 16, 1999, FNS advised plaintiffs that Bon was to be permanently disqualified from the food stamp program, since no docu-

mented request for a civil monetary penalty had been received.

Plaintiffs timely appealed the disqualification determination made by the food stamp review officer to the Administrative Review Division of the FNS. Plaintiffs offered no specific evidence to rebut the trafficking allegations other than a flat denial of the charge, nor did they raise any issue concerning whether they were entitled to, or should have been issued, a civil monetary penalty in lieu of disqualification, other than to note that they had "other employees" and "tried to monitor their conduct and behavior to comply with all applicable laws, including the food stamp regulations." (Statement of Facts ¶ 14).

On March 18, 1999, Patrick Frank, administrative review officer, acknowledged receipt of plaintiffs' request for review, and also scheduled an April 8, 1999, meeting to provide the opportunity to present any additional evidence or information which plaintiffs felt was pertinent to their case. After meeting with the plaintiffs, conducting a full review of the USDA investigation and prior administrative findings, and reviewing plaintiffs' attorney's original response to the charge letter, on May 4, 1999, the review officer upheld the permanent disqualification recommendation.

On June 4, 1999, plaintiffs, Bon Supermarket & Deli and Ton Im and Chong Im, its co-owners, filed this action pursuant to 7 U.S.C. § 2023(a)(13), seeking judicial review of the decision by FNS to disqualify plaintiffs from participation in the food stamp program. Plaintiffs contend that the agency actions are unlawful, and should be set aside by the reviewing court on the following grounds: (1) defendant's action is in excess of statutory authority because there is no statutory nor evidentiary basis to deny plaintiffs their rights to continue in the food stamp program; (2) defendant's acts are arbitrary, capricious and a denial to plaintiffs of the equal application of the law; and (3) the withdrawal of authorization is a denial of the plaintiffs'

due process rights, in that there is no rational basis in the law for such actions.[5]

Defendant filed the instant motion to dismiss or, in the alternative, for summary judgment on October 5, 1999. No response to the motion was received from plaintiffs, and the time for filing a response has long elapsed.[6] On November 1, 1999, the parties were notified by letter from the Clerk that the motion for summary judgment was being referred to the undersigned judge for decision.[7] Accordingly, the matter is ripe for review.

## II. Standards of Review

■ ] A participant store may obtain judicial review of a final determination by the FNS, as upheld by the administrative review officer, by filing suit against the United States in district court within thirty days after the delivery of the final notice of determination. *See* 7 U.S.C. § 2023(a)(13); 7 C.F.R. § 279.10. The suit in "the United States district court ... shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). The scope of review in an action brought pursuant to 7 U.S.C. § 2023(a)(13) is significantly beyond the scope of review available under the general provisions of the Administrative Procedure Act, *see Cross v. United States*, 512 F.2d 1212, 1216 (4th Cir. 1975), as the district court reviews *de novo* whether a violation of the Food Stamp Act occurred. However, the court's review of the sanction imposed by the FNS is strictly cabined—the court only determines

whether the agency's sanction was arbitrary and capricious. *See id.* at 1218. Thus, the scope of review of a sanction is not as broad as the scope of review of the fact of violation. *See id.*

■ ] The trial *de novo* provision of 7 U.S.C. § 2023(a)(13) does not, however, *entitle* plaintiffs to reach a trial on the merits of their cause of action—by providing for a trial *de novo* in the district court, "Congress intended nothing more than the district court would not be bound by the administrative record." *Redmond v. United States*, 507 F.2d 1007, 1011 (5th Cir. 1975). The Food Stamp Act casts the "burden of being the plaintiff on the aggrieved store with *all of the usual responsibilities of a plaintiff* in obtaining relief from a court, including the burden of proving facts to show that he is entitled to relief" by establishing the invalidity of the agency action by a preponderance of the evidence. *Id.* at 1011–12 (emphasis added). While the statute calls for a trial *de novo*, the character of that trial is no different than any other suit of first instance in the district court—a plaintiff seeking review of a determination by the FNS has the same rights, obligations, and privileges as any other litigant filing suit. The trial *de novo* provision does not waive the requirements of either the Federal Rules of Civil Procedure or the local rules of a federal court. A plaintiff seeking review pursuant to 7 U.S.C. § 2023(a)(13) has no greater, nor any lesser, duty to comply with the Federal Rules of Civil Procedure and the local rules than any other plaintiff

5. The complaint is unverified, signed only by counsel for the parties.

6. The response brief should have been filed with the court on or before October 18, 1999. Local Rule of Civil Procedure 7 requires that "[u]nless otherwise directed by the Court, the opposing party *shall file* a responsive brief and such supporting documents as appropriate, within eleven (11) days after service." E.D.Va. Local R.Civ.P. 7(E) (emphasis added). The court notes that a certificate of service is filed with the pending motion, signed by counsel for the defendant. It is further noted that no request for extension of

time to respond has ever been filed with the court.

7. On November 24, 1999, some three weeks later, counsel for plaintiffs telephoned the Clerk to set a hearing on the instant motion. The Clerk informed plaintiffs' counsel that the court would not grant a hearing in lieu of a proper response pursuant to Local Rule 7. *See supra* note 6. A hearing on any motion is discretionary with the court, and a hearing does not substitute for a written responsive brief. Plaintiffs then voluntarily elected, through counsel, not to file a response to this motion.

filing a suit as a matter of first instance in the district court.[8]

■ Thus, despite the statutory provision for a trial *de novo,* it is clear that summary judgment is a proper means of disposing of a request for review under 7 U.S.C. § 2023(a)(13), where there are presented no genuine issues of material fact. *See Modica v. United States,* 518 F.2d 374, 376 (5th Cir.1975) (last minute blanket denial under oath does not avoid summary judgment, even given the trial *de novo* provision of the Food Stamp Act); *Saunders v. United States,* 507 F.2d 33, 36 (6th Cir.1974) (acknowledging summary judgment proper if no genuine issue of fact shown, despite *de novo* trial provision of the Food Stamp Act); *Save More of Gary, Inc. v. United States,* 442 F.2d 36 (7th Cir.), *cert. dismissed,* 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971) (district court's grant of summary judgment under Food Stamp Act affirmed); *Top Notch Food Center, Inc. v. United States Dep't of Agric.,* 885 F.Supp. 180 (N.D.Ill.1995) (plaintiff's denial in complaint with no further response to summary judgment motion insufficient and motion for summary judgment granted based on uncontroverted facts resulting from plaintiff's failure to respond to motion); *Haskell v. United States Dep't of Agric.,* 743 F.Supp. 765, 767 (D.Kan.1990) (summary judgment granted based on facts deemed admitted pursuant to applicable local rule because *pro se* plaintiff failed to set forth controverted facts in his pleadings); *J.C.B. Super Markets v. United States,* 57 F.R.D. 500, 503 (W.D.N.Y.1972) (summary judgment denied but court stated that "[t]he use of the term 'trial *de novo'* . . . does not, however,

signify an intention to provide a party the right to have its case tried if summary judgment is appropriate because 'there is no genuine issue as to any material fact.'").[9]

Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990) (en banc) *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *Terry's Floor Fashions, Inc. v. Burlington Indus.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts through affidavits, depositions, interrogatories or other evidence, illustrating genuine issues for trial. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548; *In re McNallen,* 62 F.3d 619, 623–24 (4th Cir. 1995). A mere scintilla of evidence is not sufficient to withstand a motion for summary judgment. Rather, the evidence must be that the jury reasonably could find for the nonmoving party. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Although the court must draw all justifiable inferences in favor of the nonmoving

---

8. Plaintiff, through counsel, apparently wants to rely on the provision for a *de novo* trial without adhering to the other applicable rules of procedure. *See supra* notes 6 & 7 and accompanying text.

9. The cases cited herein involve varying versions of the Food Stamp Act, which was originally enacted in 1964. *See* Food Stamp Act of 1964, Pub.L. No. 88–525, §§ 1–16, 78 Stat. 703–09 (1964) (codified at 7 U.S.C. §§ 2011–2025 (1964)). The Act has been updated nu-

merous times, but the judicial review provision for a trial *de novo* has remained substantively the same, although it was renumbered from 7 U.S.C. § 2022 of the 1964 Act to 7 U.S.C. § 2023 in the Food Stamp Act of 1977. *See* Act of Sept. 29, 1977, Pub.L. No. 95–113, Title XIII, sec. 1301(13), § 2023, 91 Stat. 913, 974 (1977) (codified as amended at 7 U.S.C. § 2023 (1976 & Supp.1977)). The current judicial review provision remains 7 U.S.C. § 2023.

party, *see id.* at 255, 106 S.Ct. 2505, in order to successfully defeat a motion for summary judgment, a non-moving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." *Doyle v. Sentry Ins.*, 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548).[10]

Rule 56(B) of the Local Rules for the Eastern District of Virginia provides that:

Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. *In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.* (emphasis added).

■ The United States submitted its brief in support of a motion for summary judgment on October 5, 1999, with a specifically captioned section listing all material facts. Plaintiffs have failed to respond to defendant's motion.[11] Plaintiffs' failure leaves uncontroverted those facts set forth by defendant's motion, with supporting brief, and the facts are deemed admitted by operation of Local Rule 56(B). However, defendant still bears the burden of showing that the uncontroverted facts entitle it to judgment as a matter of law. The court, "in considering a motion of summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Based on the admitted facts, the court finds that no genuine issue of material fact is presented to the court, and defendants are entitled to judgment as a matter of law.[12]

### III. Analysis

#### A. Plaintiffs Have Failed To Allege A Genuine Issue Of Material Fact That Shows They Were Not Involved In Food Stamp Trafficking.

In their complaint, plaintiffs claim that they were inappropriately disqualified from the food stamp program because there was "no statutory [or] evidentiary basis to deny plaintiffs their rights to con-

**10.** *See supra* note 5.

**11.** *See supra* notes 6 & 7 and accompanying text.

**12.** The decision in *Top Notch Food Center, Inc. v. United States Dep't of Agric.*, 885 F.Supp. 180 (N.D.Ill.1995), is particularly instructive, as the facts of that case are directly on point with those of the instant case. Top Notch Food Center filed a complaint in the district court for a trial *de novo* to review the United States Department of Agriculture's (USDA) decision to disqualify it permanently from participating in the food stamp program, based on alleged food stamp trafficking violations. The USDA filed a motion for summary judgment to which Top Notch did not respond. *See id.* at 180 n. 1. Like the Eastern District of Virginia, the Northern District of Illinois required that a party moving for sum-

mary judgment submit a statement of material facts in support of its motion. *Id.* (citing Northern District of Illinois applicable local rule). The Northern District of Illinois also required by local rule, as does this district, that a plaintiff submit a statement in response that outlines disputed facts, or places material facts at issue. *Id.* Since Top Notch failed to submit a response to defendant's motion for summary judgment, the district court deemed admitted defendant's facts set forth with the motion, *id.*, and then determined the merits of the summary judgment motion on those admitted facts. The district court held that, on the basis of the evidence presented by the USDA in its statement of facts, the violations occurred and permanent disqualification was an appropriate sanction. *See id.* at 182.

tinue in the program." (Compl. at 2, ¶ X). Since plaintiffs challenge the "evidentiary basis" denying their rights to participate in the food stamp program, the court construes this as a challenge to the FNS determination that plaintiffs violated the provisions of the food stamp program by engaging in food stamp trafficking.[13]

█ Under 7 U.S.C. § 2021(b), a retail food store shall be subject to sanctions if the store has engaged in the "trafficking" of food stamps. *See* 7 U.S.C. § 2021(b)(3)(B). Trafficking in food stamps is defined as the "buying or selling" of coupons "for cash consideration other than eligible food." 7 C.F.R. § 271.2. Eligible food is any food "or food product intended for human consumption *except alcoholic beverages*." 7 C.F.R. § 271.2 (emphasis added). As a matter of law, a store is responsible for the trafficking of food stamps by "[p]ersonnel of the firm." 7 C.F.R. § 278.6(e)(1)(i) (1996). Thus, in interpreting the regulations, courts have found that liability for trafficking in food stamps is strict—a store owner does not have to be *personally* involved in the trafficking activities in order to be found in violation of the law. *See TRM, Inc. v. United States,* 52 F.3d 941, 946 (11th Cir.1995); *Food City, Inc. v. Rominger,* 917 F.Supp. 364 (M.D.N.C.1995). An employer need not even know of or benefit from an employee's trafficking activities to be held liable for those actions. *See TRM, Inc.,* 52 F.3d at 946–47; *Kim v. United States,* 121 F.3d 1269, 1274 (9th Cir.1997).

█ It is clear from the admitted facts that plaintiffs trafficked in food stamps within the meaning of 7 U.S.C. § 2021(b). On three separate occasions over approximately a two-week period, a Bon employee standing behind the check-out counter accepted, in the aggregate, $630.00 worth of food stamp coupons from an individual acting under the direct supervision and observation of a law enforcement officer. On the first occasion, February 22, 1996, an employee at Bon allowed a female working under the supervision of the Virginia Department of Alcoholic Beverage Control to purchase a six-pack of malt liquor for food stamps, with cash in the amount of $104.00 being returned to the individual. The transaction is in clear violation of 7 U.S.C. § 2021(b) and 7 C.F.R. § 271.2.

On two subsequent occasions, March 6, 1996, and March 12, 1996, the Bon employee simply purchased the food stamps outright at an approximate 50% discount off their face value. On March 6, 1996, the female engaged in the initial transaction returned to Bon, approached the same employee involved in the prior transaction, and gave the employee $205.00 in food stamps, for which she received $110.00 in cash. On March 12, 1996, the same female entered Bon, approached the same employee and gave him $220.00 in food stamps, for which she received $115.00 in cash. Such conduct falls squarely within the definition of trafficking as set forth in 7 C.F.R. § 271.2.

The admitted facts reveal clear evidence of trafficking in food stamps. As such, this court finds that plaintiffs violated the Food Stamp Act.

*B. Plaintiffs Have Failed To Demonstrate That Their Disqualification From The Food Stamp Program Was Arbitrary And Capricious.*

█ Plaintiffs claim that they were inappropriately disqualified from the food stamp program because there was no statutory basis to deny plaintiffs their rights to continue in the program. (Compl. at 2, ¶ X). However, the statutory basis to deny plaintiffs their rights to continue in the food stamp program is well-founded. Because trafficking is directly at odds with the principal purpose of the food stamp program—that is, to increase the food purchasing power of low income households—

---

**13.** Whether there is a statutory basis for the sanction is discussed *infra* Section III.B at 17–20.

Congress extensively amended the Food Stamp Act in 1982 to impose substantially more severe penalties on retail vendors who engage in such conduct. *See* H.R.Rep. No. 100–828, at 27 (1988) ("This is a strict policy. Sale of food stamps at a discount price or trading food stamps for non-food items is a serious offense. It violates the purpose of the food stamp program and harms needy food stamp families."). In particular, and with one limited exception, Congress mandated permanent disqualification as the appropriate sanction for even the first instance of trafficking. *See* 7 U.S.C. § 2021(b)(3)(B) (vendor may be permanently disqualified from participation in the food stamp program on the "first occasion of . . . a disqualification based on the purchase of coupons or trafficking in coupons or authorization card."); *see also Kim*, 121 F.3d at 1274 ("Congress mandated permanent disqualification in an effort to decrease the frequency of trafficking violations.").

The one limited exception to permanent disqualification for a trafficking offense provides the Secretary with the discretion to impose a civil monetary penalty in lieu of permanent disqualification. *See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(a), (b), (i), (j). Such a request must be made within ten days of receiving the charge letter and must include the necessary evidence to establish eligibility for the civil monetary penalty. In order to establish the minimum standard of eligibility for the civil monetary penalty, instead of permanent disqualification, a retail vendor must establish with "substantial evidence" the criteria set forth in the regula-

tions.[14] Furthermore, the request for a civil monetary penalty *must be timely;* a failure to make the request for a civil monetary penalty and submission of documentation within the ten days bars the retail vendor from such consideration. *See* 7 C.F.R. § 278.6(b)(2)(iii).

▇▇ Plaintiffs argue that their permanent disqualification from participation in the food stamp program was arbitrary and capricious in violation of equal protection of the law.[15] (Compl. at 2, ¶ X). After a violation of the Food Stamp Act has been established, the next step in the process of judicial review is the limited determination of whether the sanction is arbitrary and capricious—and a sanction is "arbitrary and capricious if it is unwarranted in law or without justification in fact." *Cross*, 512 F.2d at 1218; *see Herling's Grocery Basket, Inc. v. United States*, 538 F.2d 86 (4th Cir.1976). The Fourth Circuit has stressed that the scope of judicial review of the propriety of the sanction is more limited than that of the fact of violation, and the Secretary's prescription of periods of disqualification and definition of categories of violations for each are "entitled to very great, if not conclusive, weight." *Cross*, 512 F.2d at 1218.

The court finds that, since plaintiffs engaged in food stamp "trafficking," they were eligible in the first instance of a violation to be permanently disqualified from the food stamp program. *See* 7 U.S.C. § 2021(b)(3)(B). In the initial charge letter issued January 12, 1996, FNS gave plaintiffs notice that they may be eligible for a civil monetary penalty in lieu of

14. To be eligible for a civil monetary penalty, a retail vendor must establish with "substantial evidence" each of the following criteria: (1) the store had established and implemented an effective compliance policy and program to prevent violations of the food stamp program; (2) the store's compliance policy and program were in operation at the location where, and at the time, the violations occurred; (3) the store had developed and instituted an effective personnel training program; and (4) neither firm ownership nor management benefitted from, or in any way were

aware of or involved in the conduct or approval of trafficking violations. *See* 7 C.F.R. § 278.6(i).

15. Not one iota of evidence, or any admitted fact, before the court indicates any violation of equal protection, other than plaintiffs' unsubstantiated allegation in the complaint that the disqualification was arbitrary and capricious. Accordingly, the court does not consider this summary allegation of an equal protection violation beyond an analysis of arbitrariness and capriciousness.

permanent disqualification. The letter explained that a request for a civil monetary penalty must be submitted, along with supporting evidence that the store had an effective policy and program to prevent trafficking pursuant to 7 C.F.R. § 278.6(i), within ten days after the store received the charge letter. Plaintiffs failed to comply with the regulations. In the absence of a proper request for a civil monetary penalty and supporting documentation, a store is ineligible for such a penalty. *See* 7 C.F.R. § 278.6(b)(2)(iii). As such, permanent disqualification is a directive from 7 U.S.C. § 2021, which leaves only permanent disqualification or civil monetary penalty as a possible sanction upon the "first occasion ... of a disqualification based on the purchase of coupons or trafficking in coupons." FNS was required to impose permanent disqualification.

The court does not find the imposition of the penalty to be arbitrary and capricious in violation of the equal protection of the law.[16] The penalty is both within the scope of the statute, thus warranted in law, and supported by the facts of violation. *See Cross,* 512 F.2d at 1218.

*C. The Withdrawal Of Authorization Is Not A Denial Of The Plaintiffs' Rights To Procedural And Substantive Due Process.*

Lastly, plaintiffs allege that the withdrawal of authorization from participation in the food stamp program through the permanent disqualification acts as a denial of their procedural and substantive due process rights. The court disagrees.

 Due process requires that an individual cannot be deprived of property without constitutionally adequate procedures. *See Cleveland Board of Educ. v.*

*Loudermill,* 470 U.S. 532, 538–42, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Food City, Inc.,* 917 F.Supp. at 366. To prevail on its procedural due process claim, plaintiffs must show that: (1) they possess a property interest in continued participation in the food stamp program; and (2) they received inadequate process. *See Food City,* 917 F.Supp. at 366. The procedural process required by the due process clause is notice and opportunity to be heard.

 The Fourth Circuit has determined that retailers have a property interest in continued participation in the federal food stamp program. *See Cross,* 512 F.2d at 1217 ("[I]n a very real sense plaintiff will be deprived of 'property' if he is disqualified from the food stamp program."). Indeed, a retailer "may not be deprived of participation in the program on the basis of [an] alleged wrongdoing, without being afforded due process of law." *Id.* Even acknowledging that plaintiffs have a property interest in continued participation in the food stamp program, plaintiffs must still show they received inadequate process during the permanent disqualification review process. FNS regulations provide for multiple levels of informal agency review of alleged trafficking violations. As discussed above, plaintiffs fully availed themselves of this administrative review process. Moreover, even if the administrative review process does not satisfy procedural due process, the statutory provision of a *de novo* review in the district court does. *See Haskell v. United States,* 930 F.2d 816, 819–20 (10th Cir.1991); *Ibrahim v. United States,* 834 F.2d 52, 54 (2d Cir.1987); *Redmond v. United States,* 507 F.2d 1007, 1012 (5th Cir.1975); *Food City,* 917 F.Supp. at 367.[17]

---

16. *See supra* note 15.

17. The court notes that in *Cross,* the Fourth Circuit implied that the review in the district court satisfies the requirements of due process: "Since ... full procedural due process is not provided at the administrative levels where the fact and duration of disqualification are determined, we think that § 2022

must be read to afford [full procedural due process] in the district court so as to preserve the regulatory scheme from constitutional attack." *Cross v. United States,* 512 F.2d 1212, 1217 (4th Cir.1975) (commenting on the former section § 2022 which, like the current section § 2023, governed judicial review of the administrative decision).

**604**

] Furthermore, the statutory remedy does not violate plaintiffs' *substantive* due process rights. Substantive due process claims not involving a fundamental right are reviewed under the rational basis test. *See Washington v. Glucksberg*, 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Hawkins v. Freeman*, 195 F.3d 732, 748 (4th Cir.1999). The Eleventh Circuit has explained:

> This test is generally easily met. A searching inquiry into the validity of legislative judgments concerning economic regulation is not required.... The task is to determine if 'any set of facts may be reasonably conceived to justify' the legislation.... To put it another way, the legislation must be sustained if there is any conceivable basis for the legislature to believe that the means they have selected will tend to accomplish the desired end. Even if the court is convinced that the political branch has made an improvident, ill-advised or unnecessary decision, it must uphold the act if it bears a rational relation to a legitimate governmental purpose.

*TRM, Inc. v. United States*, 52 F.3d 941 (11th Cir.1995) (conducting a substantive due process review in a case brought pursuant to 7 U.S.C. § 2023) (citing *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1241 (11th Cir.1991)). Congress has explained the general policy underlying the food stamp program:

> It is the declared policy of Congress, in order to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households. Congress finds that the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households.... To alleviate such hunger and malnutrition, a food stamp program is ... authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.

7 U.S.C. § 2011.

Congress believes that the prevention of illegal trade in food stamps is a legitimate government purpose which itself serves the overarching purposes of the food stamp program. The House Report acknowledged that disqualification "is a strict policy. Sale of food stamps at a discount price or trading food stamps for non-food items is a serious offense. It violates the purpose of the food stamp program and harms needy families." H.R.Rep. No. 100–828, pt. 1, at 27 (1988). *See also* S.Rep. No. 97–504, at 63–64 (1982), reprinted in 1982 U.S.C.C.A.N. 1641, 1701–02 ("[T]he Committee adopted a stringent requirement that a store would be permanently disqualified upon a disqualification based on trafficking.... These increased penalties are designed to provide the deterrence for those stores that might be inclined to violate the law.").

The court finds that the permanent disqualification is rationally related to the purposes of the food stamp program and, therefore, does not violate plaintiffs' substantive due process rights.

### IV. Conclusion

For the reasons stated above, defendant's motion for summary judgment is **GRANTED.** The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to counsel for plaintiffs and defendant.

IT IS SO ORDERED.