**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————————

No. 25-12844

Non-Argument Calendar

————————————————————

ANDREW BRYANT SHEETS,

*Plaintiff-Appellant,*

*versus*

KELVIN JIMENEZ,
   In personal capacity,
DYLAN J. RENZ,
   In personal capacity,
CITY OF PUNTA GORDA,
   Municipality,

*Defendants-Appellees.*

————————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:24-cv-00704-SPC-KCD

————————————————————

Before ROSENBAUM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Andrew Sheets ("Sheets"), proceeding *pro se*, appeals the district court's order dismissing with prejudice his 42 U.S.C. § 1983 complaint alleging violations of the First Amendment of the U.S. Constitution by Officers Kelvin Jimenez ("Jimenez") and Dylan Renz ("Renz") for viewpoint discrimination in their enforcement of Punta Gorda City Ordinance § 15-48(e) (the "ordinance") and by the City of Punta Gorda, Florida (the "City") for its failure to train its officers.

On appeal, Sheets argues his complaint properly alleged comparators and showed that the officers selectively enforced the ordinance against certain viewpoints. He also contends the City's enforcement of the ordinance was arbitrary, capricious, and haphazard, in violation of the First Amendment, and showed deliberate indifference for the City's failure to train for *Monell*[1] liability. Sheets also appeals the district court's denial of his motion for reconsideration.[2] After careful review, we affirm.

---

[1] *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658 (1978).

[2] Because Sheets raises the district court's denial of his motion for reconsideration only in passing, any arguments specific to that claim are waived. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (a claim is abandoned when an appellant "either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"). Sheets provides no support in his briefs for his conclusion that denying this motion was "not proper[,]" suggesting only that his position is "[s]elf explanatory."

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

A self-described "Government accountability journalist," Sheets posts police-related news stories on his social media accounts. In 2019, Sheets filed a federal lawsuit to challenge the ordinance. *See Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115 (M.D. Fla. 2019). The ordinance states as follows:

> Except within the City Council Chambers, conference rooms, and other locations in which a public meeting is being conducted pursuant to a public notice, it shall be unlawful and a violation of this Ordinance, to record video and/or sound within City-owned, controlled, and leased property, without the consent of all persons whose voice or image is being recorded. This prohibition shall not apply to any law enforcement activities. In addition to being a violation of this Ordinance, if anyone who is observed to be recording video and/or sound within City-owned, controlled, or leased property, without the consent of all persons whose voice or image is being recorded, and such person refuses to cease activity after being advised that such activity is prohibited under this Ordinance, such refusal shall be considered to be a disruption to the work of City government. Therefore, such persons shall be deemed to no longer be present

---

[3] The following facts are taken from Sheets's third amended complaint, including the screenshots of and links to videos that he incorporated. Consistent with the standard of review for motions to dismiss, we construe the facts in the light most favorable to Sheets. *See Newbauer v. Carnival Corp.*, 26 F.4th 931, 933 n.1 (11th Cir. 2022).

within the City-owned, controlled, or leased property on legitimate public business. The City Manager and his designees are hereby authorized on behalf of the City of Punta Gorda, Florida to request any person who refuses to cease the unconsented video and/or sound recording to immediately leave the premises. Any person who refuses to cease the unconsented to video and/ or sound recording, and refuses to immediately leave the premises following the request of the City Manager or his designee, shall be considered as a trespasser. Law Enforcement, at its option, at the request of the City may issue a trespass warning notice for this conduct.

In August 2020, he entered the Punta Gorda Public Safety Complex, seeking to file a complaint. During this visit, Sheets encountered a news crew, which Renz had allowed into the station's back offices to film a story unrelated to government accountability. Sheets noted that Renz and Jimenez took "no actions" against the news crew. But Jimenez did confront Sheets, who had started recording the news crew with his body camera. Jimenez asked Sheets to step outside as he was recording. Despite Sheets's insistence that he could remain inside, Jimenez asked him twice more to step outside; Sheets relented, because he feared Jimenez. Jimenez then physically blocked Sheets from re-entering the building and advised that Sheets could not be inside while recording. In Sheets's view, he was legally recording Jimenez and was not asked to stop, and his removal was unlawful under the ordinance. Sheets con-

trasted his treatment to that of other journalists allowed to film inside the building. He attributed this difference to his focus and reporting on government accountability. In October 2020, Renz sent an incident report and trespass warning over Sheets's attempts to record footage inside the City's facilities.[4] To Sheets, the report made clear he had received the trespass warning because of the content of his videos and not his conduct.

On August 9, 2024, Sheets filed a *pro se* complaint under 42 U.S.C. § 1983 against Jimenez and Renz, in both their professional and personal capacities, and the City of Punta Gorda. He alleged violations to his First Amendment rights, with regards to Punta Gorda Ordinances § 15-48 and § 1938-2020, which he claimed made it "illegal to film in any city building" without asking for consent from all the individuals being filmed. Both officers and the City filed motions to dismiss Sheets's complaint on various grounds, including that it failed to state a claim. Sheets then filed an amended complaint against the same defendants, alleging eight counts of First Amendment violations. The City and officers again filed motions to dismiss Sheets's amended complaint for failure to state a claim. On December 12, 2024, the district court dismissed five of Sheets's eight counts with prejudice, and it dismissed with preju-

---

[4] Sheets featured the incident report with a screenshot in his complaint, and he attached the trespass warning as an exhibit. The incident report identified "at least" five occasions where Sheets "entered the lobby . . . and violated facility rules" by recording in the lobby.

dice all claims brought against both officers in their official capacities. The district court dismissed the other three counts without prejudice and allowed Sheets to file an amended complaint with these counts. Sheets filed a second amended complaint on December 31, 2024, and the City and officers promptly moved for dismissal. Like before, the district court dismissed without prejudice the second amended complaint for failure to state a claim but permitted Sheets to file a third amended complaint with the three remaining counts.

On April 28, 2025, Sheets filed his third amended complaint against the City and both officers in their personal capacities.[5] First, Sheets alleged that Jimenez violated his First Amendment rights by ordering him to leave Punta Gorda's Public Safety Complex though Sheets had not violated the ordinance. He attributed Jimenez's actions to viewpoint discrimination based on the nature of Sheets's journalism. Second, Sheets alleged that Renz "trespass[ed]" him for filming in the Punta Gorda Public Safety Complex and posting that content on YouTube, in violation of his First Amendment rights. He argued that Renz "did not trespass other journalists" who had engaged in "identical activity[.]" Third,

---

[5] In addition to a screenshot of the incident report, and the trespass warning attached as an exhibit, Sheets submitted several videos with his complaint. Through these clips, Sheets alleged that city employees never asked government accountability journalists if they received consent to record, which he considered evidence of the ordinance's selective enforcement and the City's failure to train its employees on viewpoint discrimination.

Sheets alleged a *Monell* violation against the City for First Amendment viewpoint discrimination arising from its deliberate indifference in failing to train city employees.  Here, he cited three instances where he alleged the ordinance had been arbitrarily, capriciously, and haphazardly enforced against him, as well as four occasions where his First Amendment rights had been violated by untrained Punta Gorda employees.  He argued that the repeated alleged violation of his rights was evidence of the City's pattern of deliberate indifference.

On May 12, 2025, the three defendants moved to dismiss Sheets's third amended complaint for failure to state a claim.  In its motion, the City argued that Sheets had not shown that his constitutional rights had been violated.  The City also asserted that Sheets had not demonstrated that it was "on notice of its employees' alleged viewpoint discrimination or selective enforcement and deliberately chose not to take action."  In addition, the City argued that Sheets had not established a "pattern of constitutional violations" or a "causal link" between such a violation and a "custom, policy, or practice" by the City as required for *Monell* liability.  Sheets, in response, contended that the City was "on notice" regarding the "proper way" to enforce the ordinance because of his 2019 lawsuit.  Sheets further maintained that his third amended complaint alleged two "illegal and arbitrary" enforcements against him and that the City had enforced the ordinance in an arbitrary, capricious, and haphazard manner.

In Jimenez and Renz's motion to dismiss, they asserted that Sheets had failed to illustrate any viewpoint discrimination, in part because of his failure to show similarly situated comparators for a selective enforcement claim. The officers argued they were entitled to qualified immunity, as Sheets could not show a violation of any clearly established First Amendment right.

The district court dismissed Sheets's third amended complaint with prejudice for failure to state a claim. As a preliminary consideration, the district court cited *Hoffman v. Delgado*, 2025 WL 25856 (11th Cir. Jan. 3, 2025), to show the ordinance had already been found "viewpoint-neutral and reasonable and thus constitutional." Construing Sheets's claims against the officers as selective-enforcement claims, the district court concluded that Sheets's claims failed because he had not alleged any "adequate comparators."[6] And the district court further noted that Sheets's claim against Renz must fail; the claim hinged on Renz issuing the trespass warning, which Sheets had conceded he did not do. As for

---

[6] The district court distinguished Sheets from other media members. Whereas Sheets had violated the ordinance on multiple occasions, the media teams identified by Sheets had been "clearly invited to conduct the news stories in the Public Safety Complex." Those media members "recorded interviews for televised news stories," while Sheets was "simply filming his actions and the actions of those around him with a body camera and without prior notice or consent." The district court also rejected Sheets's attempts to use other government accountability journalists as comparators, as those journalists "share[d] the same viewpoint" as Sheets and had engaged in similar conduct. Moreover, neither named officer had "any involvement" with these other government accountability journalists.

Sheets's *Monell* claim against the City, the district court dismissed this claim, as Sheets had not shown that the officers had violated his constitutional rights.

On July 18, 2025, Sheets filed a motion for reconsideration of the district court's order dismissing his complaint. But because Sheets merely raised the same issues as he had before, the district court denied his motion. Sheets now appeals the district court's order dismissing his complaint.

## II.    STANDARD OF REVIEW

We review the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255 (11th Cir. 2015). We review the denial of a Federal Rule of Civil Procedure 59(e) motion for abuse of discretion. *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include enough facts to state a claim to relief that is "plausible on its face." *Id.* (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks and citation omitted). Although we review a *pro se* complaint liberally, we need not rewrite one so that it will survive a motion to dismiss. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## III.   ANALYSIS

On appeal, Sheets contends that the district court erred by dismissing his complaint with prejudice. Denying that he violated the ordinance, Sheets argues that Jimenez and Renz's alleged conduct constituted viewpoint discrimination, and that his complaint included proper comparators that were similarly situated.  He also argues that the City's enforcement of the ordinance was "arbitrary, capricious, and haphazard," in violation of the First Amendment, and showed a deliberate indifference for the failure to train for *Monell* liability.  We address each argument in turn.

### A.  Sheets Failed to State Claims Against Either Officer

Sheets contends that the district court erred by dismissing the First Amendment claims against Jimenez and Renz for viewpoint discrimination.  He argues that the officers violated his constitutional rights when they "physically remove[d] and trespassed" him and that he provided relevant examples of similarly situated comparators.

To state a § 1983 claim, a plaintiff must allege that a person acting under color of state law committed an act that deprived him of some right protected by the Constitution or laws of the United States. 42 U.S.C. § 1983.  The First Amendment bars governmental bodies, including municipalities and their employees, from "abridging the freedom of speech."  U.S. Const. amend. I; *see also Holloman*, 370 F.3d at 1268 ("The First Amendment, as incorpo-

rated through the Due Process Clause of the Fourteenth Amendment, applies to state and municipal governments, state-created entities, and state and municipal employees[.]" (citations omitted)).

The general First Amendment right to record information about what public officials do on public property, particularly regarding a matter of public interest, is subject to reasonable time, place, and manner requirements. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). The validity of a regulation depends on the forum in which it applies. *McDonough v. Garcia*, 116 F.4th 1319, 1322 (11th Cir. 2024) (en banc). For limited public forums, restrictions "on speech must be viewpoint neutral and reasonable in light of the purpose served by the forum." *Id.* at 1328 (quotation marks and citation omitted). Reasonableness "must be assessed in the light of the purpose of the forum and all the surrounding circumstances." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (quotation marks omitted). "[T]he government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 805-06 (1985).

### i.      Officer Renz

Sheets's claim against Renz fails at the outset. At this stage, we consider only "those facts contained in the pleadings and attached exhibits." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (citing *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006)). Though this principle "usually

benefits the plaintiff," that is not always true, *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019), and a litigant risks defeat "by his own evidence" when "he has pleaded too much and has refuted his own allegations[.]" *Id.* (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)). That has happened here.

Sheets previously attached the police report to his second amended complaint, and we consider that report as "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When read together, the Complaint and report do not plausibly allege that Renz had violated Sheets's First Amendment rights. Sheets's claim against Renz centers on Renz's supposed "decision to trespass" Sheets, yet the report makes clear that Renz did not issue the trespass warning. This thus negates Sheets's claim. And the third amended complaint offers only conclusory allegations that Renz had "[t]respassed" Sheets based on the content of Sheets's videos. The district court thus did not err in dismissing Sheets's claim against Renz.

### ii.    Officer Jimenez

Turning to Officer Jiminez, Sheets also fails to state a viewpoint discrimination claim against him. A restriction on speech constitutes viewpoint discrimination "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995). Restrictions on speech also cannot be exercised in an "arbitrary and haphazard manner." *Cambridge*

*Christian School, Inc. v. Fla. High School Athletic Ass'n, Inc.*, 942 F.3d 1215, 1240 (11th Cir. 2019). Sheets's allegations face obstacles on both grounds.

We previously held that the City's ordinance is viewpoint neutral and reasonable. *See Hoffman*, 2025 WL 25856, at *3. And under these circumstances, Sheets merely assumes that Jimenez acted to restrict a particular viewpoint, let alone the viewpoint of government accountability journalists. Even viewed in the light most favorable to Sheets, the complaint does not allege that Sheets communicated his government-accountability viewpoint to Jimenez or that this subject was ever discussed. Instead, as Sheets describes it, Jimenez expressed concerns about Sheets's recording activities on four occasions during their August 2020 exchange. Sheets does not plead sufficient facts to support his conclusory assertion that Jimenez targeted his viewpoint as a government accountability journalist.

Moreover, Sheets does not allege—beyond conclusory statements—that Jimenez enforced the ordinance's restrictions in an arbitrary or haphazard manner.[7] Both below and on appeal, Sheets attempts to distinguish his treatment from that of "non [g]overnment [a]ccountability journalists[.]" But that comparison is unavailing, because the news crews were not similarly situated. As Sheets himself acknowledges, police personnel had "allowed the

---

[7] In our analysis, we consider that the City has designated the police department as a limited public forum and prohibits unconsented recording within the police department building.

news crew[] into back offices to film." That is, the news crews were invited to film a news story at the police facility. The news crews therefore fell outside the scope of the ordinance, because they had consent to enter the police facility. By contrast, Sheets did not seek or obtain consent to record within the police station before he began recording, and he wasn't trying to film a news story. Rather, he was simply filming the actions of those around him within the police facility, without seeking or obtaining prior consent. Because Sheets did not engage in the same type of conduct as the news crews, he cannot rely on the news crews to support his viewpoint discrimination claim.

Nor can Sheets draw on other videos he has submitted of "government accountability journalists." Those individuals likewise failed to obtain consent to record and therefore cannot serve as examples of arbitrary enforcement of the ordinance. The district court thus did not err in dismissing Sheets's claim against Jimenez because Sheets failed to allege facts establishing that his speech was restricted in an arbitrary or haphazard manner.

### B. Sheets Failed to State a *Monell* Claim Against the City

We turn next to address Sheet's *Monell* claim against the City and conclude that the district court did not err in dismissing Sheets's *Monell* claim against the City. A municipality can be held liable under § 1983 where the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers. *Monell*, 436 U.S. at 690. "To impose *Monell* liability, a plaintiff must show:

(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (quotation marks and citation omitted).  To impose *Monell* liability for failure to train officers, plaintiffs must provide some evidence of a pattern of improper training and show that the municipality was aware of the deficiencies in its training program that were likely to result in the violation of constitutional rights.  *Id.*

Here, as previously discussed, Sheets has not established an underlying constitutional violation of his rights.  His *Monell* claim fails on that basis alone, since no liability can attach to the City.  But even if we overlook that threshold failure of Sheets's claim, it must also fail because Sheets does not include sufficient facts to allege that the City was deliberately indifferent about the need to train its officials to avoid First Amendment violations for viewpoint discrimination.  His claim relies on conclusory statements that his rights were violated, that untrained employees were responsible, that the City demonstrated a deliberate indifference and a failure to train, and that the City's "procedures, policies, practices, and customs" channeled a disregard for Sheets's constitutional rights.  But he makes no allegations, for instance, of any training procedures or materials used by the City's employees.  His allegations are thus insufficient to plausibly state a *Monell* claim, and the district court correctly dismissed the action.

## IV.    CONCLUSION

For the reasons discussed, we conclude that the district court did not err in dismissing Sheets's third amended complaint with prejudice or in denying his motion for reconsideration. We thus affirm both the district court's order dismissing Sheets's third amended complaint with prejudice and the district court's denial of the motion for reconsideration.

**AFFIRMED.**